IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 10-00328-01-CR-W-DW |
| MICHAEL G. LARSON, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION TO DENY
## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Before the court is defendant's motion to suppress 31 disks recovered from the flue of the chimney at 1401 South Osage Street by the new home owner on the ground that the police failed to obtain a search warrant before viewing the contents of the disks. I find that defendant abandoned the disks and therefore the police were not required to obtain a search warrant before viewing their contents. Defendant's motion to suppress this evidence should therefore be denied.

### *I.    BACKGROUND*

On November 19, 2010, an indictment was returned charging defendant with one count of attempted receipt of child pornography over the internet, in violation of 18 U.S.C. § 2252(a)(2), two counts of attempted distribution of child pornography over the internet, in violation of 18 U.S.C. § 2252(a)(2), one count of receiving child pornography over the internet, in violation of 18 U.S.C. § 2252(a)(2), and one count

of possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4).

In late 2010 foreclosure proceedings began on defendant's house. He eventually was forced to vacate his home in March 2011. In May 2011, the new owner began renovating the house. He discovered 31 disks hidden in the flue of the chimney. Upon hearing about the former owner's criminal charges, the new owner contacted police and turned over the disks. Police viewed the contents of the disks and determined that they contained child pornography.

On December 31, 2011, defendant filed a motion to suppress those disks (document number 53) arguing that the government was required to obtain a warrant before viewing the disks. On November 4, 2011, the government filed a response (document number 54) arguing that defendant has no challenge the search of disks found in his former home as he had no expectation of privacy, and the disks were abandoned and therefore no warrant was required.

On November 14, 2011, I held a hearing on defendant's motion. The government appeared by Assistant United States Attorney Teresa Moore. The defendant was present, represented by John Osgood. The following witnesses testified:

1.  Christopher Kimball
2.  Special Agent Michael Daniels, FBI

2

3.  Defendant Michael Larson

4.  Angela Pennington, defendant's live-in girl friend

## II. EVIDENCE

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact:

1.  On November 10, 2009, the FBI executed a search warrant on 1401 South Osage in Independence, Missouri, in connection with a child pornography investigation (Tr. at 8-9). Defendant, the owner of the house at the time, was eventually indicted for possession of child pornography.

2.  Christopher Kimball is in the business of purchasing foreclosed homes and fixing them up (Tr. at 4). In May 2011, Christopher Kimball purchased the residence located at 1401 South Osage in Independence, Missouri (Tr. at 3). Mr. Kimball purchased the house through Fannie Mae after it had been foreclosed (Tr. at 3-4). When he took possession of the house in May 2011, it was empty (Tr. at 4).

3.  During the next three months, Mr. Kimball gutted the home and put in new sheet rock, plumbing and wiring (Tr. at 4). During the rehab process, Mr. Kimball removed the chimney flue and discovered some disks behind the door of the access panel (Tr. at 5). The disks did not have any writing or labels on them (Tr. at 5-6). Mr. Kimball kept the disks on a back wall of the house for about a week (Tr. at 6).

3

4. One of Mr. Kimball's new neighbors came over to check on the progress of the rehab work (Tr. at 6). The neighbor saw the stack of disks and, being a music buff, inquired about them (Tr. at 6). Mr. Kimball indicated he had found the disks in the house, and the neighbor told Mr. Kimball that the FBI had raided that house a few times and found pornography there (Tr. at 6).

5. Mr. Kimball contacted a lawyer who referred him to the Independence Police Department (Tr. at 6). Mr. Kimball turned the disks over to that department (Tr. at 6). At no time did Mr. Kimball attempt to view the contents of the disks (Tr. at 7).

6. The Independence police department previewed a couple of the disks to see what was on them (Tr. at 9). They saw images of child pornography on the disks (Tr. at 9). The Independence police department sent the disks to their lab to conduct fingerprint tests (Tr. at 10). Defendant's prints were found on the disks (Tr. at 14).

7. The fingerprint testing was done by Independence, and then the disks were sent to Kansas City's police department to be certified (Tr. at 10-11). At that point, the disks were returned to the Independence police department. The officers did some checking on the address and learned of the child pornography investigation at that residence when defendant lived there (Tr. at 10). The disks were turned over to the FBI on October 26, 2011 (Tr. at 11).

4

8.  Special Agent Michael Daniels viewed the 31 disks and discovered child pornography on most of them (Tr. at 11).  The file creation dates on the disks ranged from 2006 to 2008 (Tr. at 16).  The only writing on the disks when Special Agent Daniels received them consisted of the sequential numbering done by the Independence police department (Tr. at 11).

9.  On November 1, 2011, Special Agent Daniels spoke with Mr. Kimball who said he was remodeling the home and found the disks in the chimney flue (Tr. at 12).

10.  Mr. Kimball moved into the house in approximately the end of August 2011 after completing the remodeling (Tr. at 4).  He does not know defendant and never met defendant (Tr. at 6).  No one has ever contacted Mr. Kimball about any items that had been left in the house (Tr. at 7).

11.  Defendant admitted that he created the disks between 2006 and 2008 and hid them in the chimney flue (Tr. at 18).

12.  In August 2010, Fannie Mae foreclosed on defendant's house (Tr. at 20).  Because defendant did not vacate the home at that time, he was sued in order to get him out (Tr. at 20).  He finally had to move out of the house the beginning of March 2011 (Tr. at 21).

13.  Although defendant moved out of the house in March 2011, he did not take all of his belongings with him (Tr. at 22).  Defendant left behind the 31 disks, most of his children's

5

clothing, a bed, a dresser, and a few boxes of personal paperwork (Tr. at 22-23, 25). Despite having left the 31 disks and other items in the residence when he moved out, defendant did not intend to abandon the disks or the other property he left behind when he moved (Tr. at 19).

    14. After he had moved out, he made one attempt to get inside the house but could not (Tr. at 20). This was after Fannie Mae had foreclosed, sued defendant to remove him from the house, and taken possession of the residence (Tr. at 21). Defendant admitted that he had from August 2010 until March 2011 to get his belongings out of the house but he failed to do so (Tr. at 21). Defendant never contacted the new homeowner to try to get the rest of his property back (Tr. at 22, 24). Defendant never contacted Fannie Mae to try to get the rest of his property back (Tr. at 23, 24). He contacted no one about trying to get any property back (Tr. at 24).

    15. Defendant's girl friend, Angela Pennington, resided with him at 1401 South Osage, but she had no ownership interest in the house (Tr. at 25). Defendant did not tell her until January 2011 about the foreclosure (Tr. at 27). At that time she learned that the foreclosure had been completed the previous August (Tr. at 28). Although Fannie Mae had foreclosed on defendant's house months earlier, Ms. Pennington was hopeful that one of the home modification programs would allow them to stay in

6

the house (Tr. at 26).  Despite having had from January 2011 until March 2011 to gather her belongings to move, she found it hard to get her belongings together because she had to work (Tr. at 28).

16.  Once Fannie Mae took possession of the house, Ms. Pennington went by several times and saw people there cleaning things out and throwing them in a dumpster (Tr. at 26).  One time she talked to a man there who would not let her in the house (Tr. at 26).  She did not try to take her belongings out of the dumpster because garage items were on top and because it was in the driveway which was private property (Tr. at 29, 31).  This occurred in approximately the second week of March 2011 (Tr. at 30).

17.  Ms. Pennington called Fannie Mae about the second week of March but was told that since her name was not associated with the house, they could not discuss anything with her (Tr. at 32).

### *III. ABANDONED PROPERTY*

"A warrantless search of abandoned property does not implicate the Fourth Amendment, [because] any expectation of privacy in the item searched is forfeited upon its abandonment." United States v. Smith, 648 F.3d 654, 660 (8th Cir. 2011), quoting United States v. James, 534 F.3d 868, 873 (8th Cir. 2008), cert. denied, 129 S. Ct. 2818 (2009); United States v. Tugwell, 125 F.3d 600, 602 (8th Cir. 1997).  "The issue is not

7

abandonment in the strict property right sense, but rather, whether the defendant in leaving the property has relinquished [his] reasonable expectation of privacy so that the search and seizure is valid." United States v. Smith, 648 F.3d at 660, quoting United States v. Hoey, 983 F.2d 890, 892-93 (8th Cir. 1993). Whether an abandonment has occurred is determined on the basis of the objective facts available to the investigating officers, not on the basis of the owner's subjective intent. United States v. Tugwell, 125 F.3d 600, 602 (8th Cir. 1997).

Defendant's subjective desire to someday retrieve the computer disks borders on the absurd. He no longer owned the house. He moved out of the house. Someone else bought the house and moved in. Defendant never contacted Fannie Mae, he never contacted the new owner. More than a year from the date of foreclosure had gone by before defendant learned the authorities had possession of those disks; nearly eight months had gone by since he vacated the premises. It is unclear to me exactly when defendant planned to try to retrieve these disks, and it is ridiculous to think that he had any privacy interest in these disks which were sitting in someone else's house for this length of time.

Not surprisingly, there are no cases which support defendant's theory on this point. However, United States v. Thomas, 451 F.3d 543 (8th Cir. 2006), cert. denied, 549 U.S. 1144

8

(2007), is similar in that the defendant in that case left mail in a mailbox at Mail Boxes, Etc. He failed to pay the rent on the box or come by to ask for the mail for about a year. Police obtained the mail from the Mail Boxes, Etc., establishment and opened it without a warrant. The court held that the mail was clearly abandoned.

By contrast, in United States v. James, 353 F.3d 606 (8th Cir. 2003), the defendant sealed disks in an envelope, wrote his name on the envelope, and gave the envelope to someone else to hold for him. The court found that under those circumstances, the defendant had not abandoned the disks.

In this case, defendant did not in any way indicate an intent to maintain ownership of these disks. He had ample opportunity to remove those disks from the house. Defendant knew in August 2010 that he had lost ownership of his house. He told his live-in girl friend in January 2011 that he had lost the house. His girl friend spent those early months of 2011 trying to get her things packed up. Both defendant and his girl friend moved out of the house during the first week of March 2011. During the months after he vacated the house, defendant never contacted anyone about retrieving his disks.

## *IV. CONCLUSION*

Based on the above-stated findings of fact and the law as discussed in section III, I conclude that defendant abandoned the

9

disks when he left them in his house when he moved out. As a result, the police were not required to obtain a search warrant before looking at the contents. Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying defendant's motion to suppress evidence.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has 14 days from the date of this report and recommendation to file and serve specific objections.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
November 17, 2011

10